496 So.2d 1268 (1986)
PLANTERS TRUST & SAVINGS BANK, Plaintiff-Appellee,
v.
L & W FARMS, INC., et al., Defendants-Appellants.
No. 85-1197.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
Writ Denied January 9, 1987.
Scofield, Bergstedt, etc., J. Michael Veron and Richard Perles, Lake Charles, for defendants-appellants.
David S. Rubin, Warren D. Rush, Lafayette, for plaintiff-appellee.
Before GUIDRY, DOUCET and KING, JJ.
KING, Judge.
The only issue presented by this appeal is whether or not the trial court erred in granting a summary judgment to the legal *1269 entity substituted for the plaintiff in this suit.
Planters Trust and Savings Bank (hereinafter referred to as Planters) brought suit on a promissory note against L & W Farms, Inc. (hereinafter referred to as L & W Farms) and also against Glenn O. Willoughby and Stephen O. Willoughby (hereinafter referred to as the Willoughbys) and John Leenerts and Roger Leenerts (hereinafter referred to as the Leenerts), the four shareholders of L & W Farms, as guarantors of the promissory note executed by L & W Farms. Subsequent to the filing of the lawsuit, two of the defendants, John Leenerts and Roger Leenerts, filed petitions for bankruptcy and were discharged in bankruptcy from their indebtedness. After partial trial of the suit and a recess of the trial, Planters was closed by the Louisiana Commissioner of Financial Institutions and the Federal Deposit Insurance Corporation (hereinafter referred to as the FDIC) was appointed as liquidator and later substituted as plaintiff in the pending suit. The FDIC then filed a motion for summary judgment. The trial court granted the summary judgment as prayed for and rendered judgment in favor of the FDIC and against L & W Farms and the Willoughbys, in solido, for the full principal amount of the promissory note sued on, plus interest, attorney's fees, and court costs. L & W Farms and the Willoughbys appeal the trial court's granting of the motion for summary judgment and the rendition of judgment against them. We affirm.

FACTS
L & W Farms, a Louisiana corporation owned by four shareholders, the Willoughbys and the Leenerts, was formed for the purpose of acquiring and farming property in Calcasieu Parish, Louisiana known as the Kinney Plantation. On August 17, 1981 L & W Farms executed a promissory hand note (hereinafter referred to as the hand note) to Planters in the principal amount of $564,769.60 and the proceeds from this loan were used to pay previous loans for farming operations and equipment. As security for the payment of this hand note, the Willoughbys and the Leenerts voluntarily signed continuing guarantees for the principal amount of the note and interest, attorney's fees, and court costs. The hand note represented the renewal of outstanding balances of prior notes owed by L & W Farms to Planters plus an unpaid $180,000.00 balance due on a note owed to Planters by Leenerts Farms, Inc., which was a separate farming entity owned by defendants, John Leenerts and Roger Leenerts.
On L & W Farms' failure to pay the hand note, Planters filed suit against L & W Farms and the Willoughbys and the Leenerts. Planters' petition sought judgment in its favor and against L & W Farms and its guarantors, the Willoughbys and the Leenerts, in solido, in the amount of $554,888.31, the unpaid principal balance of the hand note, plus interest, attorney's fees, and court costs. L & W Farms and the Willoughbys answered the suit and urged numerous affirmative defenses including failure of consideration, breach of contract, and fraud.
L & W Farms and the Willoughbys also filed a reconventional demand seeking relief against Planters' claims and also seeking damages, alleging that the hand note of L & W Farms, secured by the guarantees of the Willoughbys, given to Planters on August 17, 1981, was invalid and unenforceable on the grounds of Planters' breach of contract and negligent or fraudulent misrepresentations and that for these reasons they were entitled to damages.
Subsequent to the filing of the lawsuit the defendants, John Leenerts and Roger Leenerts, filed petitions for bankruptcy and were discharged in bankruptcy from their indebtedness to Planters under their continuing guarantees. Trial was held on April 11 and 12, 1984, after which the court recessed pending continuation of the trial on a later date. On May 18, 1984, the Louisiana Commissioner of Financial Institutions declared Planters insolvent and closed Planters. The FDIC was appointed *1270 as receiver and liquidator, and later substituted itself by court order as a party plaintiff in the litigation in place of Planters.
On June 28, 1985, the FDIC filed a motion for summary judgment. After conducting a hearing, the trial court granted the motion for summary judgment filed by the FDIC, and rendered judgment in favor of the FDIC and against L & W Farms and the Willoughbys, in solido, in the principal amount of $554,888.31, plus interest and attorney's fees, as provided in the hand note, and court costs. A written judgment was signed on September 13, 1985. L & W Farms and the Willoughbys have appealed, contending that the trial court erred in finding that the FDIC was entitled to summary judgment based on the evidence before the trial court. Specifically, defendants allege that the trial court erred:
(1) In not finding there was a question of fact regarding the amounts advanced to L & W Farms by Planters;
(2) In finding that L & W Farms' line of credit with Planters was not evidenced in writing; and
(3) In not finding a failure of cause under the financing contract of L & W Farms with Planters.

LAW
Summary judgment can not be rendered unless the pleadings, depositions, affidavits and like evidence show that there is no genuine issue as to a material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966; Walker v. Graham, 343 So.2d 1171 (La. App. 3 Cir.1977), writ den., 346 So.2d 213 (La.1977). Inferences to be drawn from underlying facts contained in materials before the court must be viewed in the light most favorable to the party opposing the motion for summary judgment. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La. 1981).
Defendants argue that there is a genuine issue of material fact as to the amounts advanced to L & W Farms by Planters, and for this reason contend that the trial court's granting of the summary judgment against them was improper. Specifically, defendants assert that the hand note for $564,769.60 was unenforceable due to a failure of consideration, since $180,000.00 of the principal amount represented by that hand note was credited by Planters Bank to the account of Leenerts Farms, Inc. rather than to the account of L & W Farms. It is appellants' contention that while funds represented by the hand note were borrowed for the account of L & W Farms that some of these funds were actually used for the benefit of another corporation.
The record shows that a promissory note for $180,000.00 was executed by Leenerts Farms, Inc. through its President, John Leenerts, to Planters on May 2, 1980. Notations on the back of the note reflect that the money was applied to the account of Leenerts Farms, Inc. However, the testimony of a bank officer and John Leenerts shows that it was not unusual for money to be borrowed by either L & W Farms or Leenerts Farms, Inc. and distributed to the account of the other corporation.
A.J. Howard, an executive officer at Planters Bank, testified as follows:
"THE COURT: Let's see, now, it's my understanding that Mr. Rush asked you if it was unusual to borrow money from the Leenerts Farm and apply it to L & W Farm, and now you're saying it's apparently not unusual to borrow money on L & W and apply it to Leenerts.
A. That's right."
John Leenerts, President of L & W Farms, testified as to transactions between the two companies as follows:
"A.... So, at that point in time, yes, then we went ahead and used our line of credit with FBSLeenerts Farms had already established one, and released it over to L & W Farms.
Q. Okay. So, that was a sum exceeding approximately $218,000.00?
A. Yeah, it was something like that.
Q. So, there were transactions where Leenerts Farms, Inc. aided L & W *1271 Farms in its operations and then viceversa, is that correct?
A. That transaction there was that way, I guess."
Appellants assert that since $180,000.00 of the total amount represented by the hand note was not used for the L & W Farms account, but rather for the account of Leenerts Farms, Inc., Planters' action in crediting some of L & W Farms' money to Leenerts Farms, Inc. constitutes a failure of consideration for the hand note sued on and raises a question of material fact as to the amount recoverable under the hand note sued on. The hand note which is at issue in this lawsuit is not the note of Leenerts Farms, Inc., dated May 2, 1980 for $180,000.00, but is instead the hand note of L & W Farms dated August 17, 1981 for $564,769.60. The hand note, dated August 17, 1981, was executed by L & W Farms' President, John Leenerts, who certainly had knowledge of any transactions between the accounts of L & W Farms and Leenerts Farms, Inc. and of any amounts L & W Farms owed to Planters. Since John Leenerts, as duly authorized President of L & W Farms, executed the hand note to Planters for L & W Farms in the full amount of $564,769.60, it cannot be said that there is a question of material fact as to the amount recoverable under the hand note sued on. It is undisputed that Planters loaned L & W Farms the sum of $564,769.90 pursuant to the hand note dated August 17, 1981. While appellants may have a complaint about the manner in which John Leenerts, the President of L & W Farms, acted to approve Planters' application of some of the proceeds of the loan evidenced by the hand note, to shift funds from the L & W Farms account to the Leenerts Farms, Inc. account, this does not affect the validity of the hand note sued on. This argument is without merit.
Appellants' next assertion is that the trial court erred in finding that the defendants' line of credit was not evidenced in writing. Appellants further contend that Planters' breach of this financing agreement resulted in a failure of the principal cause for the hand note. It is well established, under both federal common law and statutory provisions, that oral agreements between borrowers and banks are ineffective against the FDIC as a receiver where the agreements are not recorded. Federal Deposit Ins. Corp. v. Rosenthal, 477 F.Supp. 1223 (E.D.Wis.1979), aff'd, 631 F.2d 733 (7th Cir.1980); Gunter v. Hutcheson, 674 F.2d 862 (11th Cir.1982), cert. den., 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), reh. den., 459 U.S. 1059, 103 S.Ct. 477, 74 L.Ed.2d 624 (1982).
The rule which proscribes the enforcement of unwritten agreements against the FDIC evolved from the case of D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The Fifth Circuit interpreted D'Oench as holding that a defendant would not be allowed to assert as a defense to a claim by the FDIC that a written document which is valid on its face, is modified by a secret agreement. Federal Deposit Ins. Corp. v. Hoover-Morris Enterprises, 642 F.2d 785 (5th Cir.1981).
In 1950, Congress added a second paragraph to 12 U.S.C. § 1823(e), which protects the FDIC from secret agreements, and because of this protection the FDIC can rely upon the records of a bank when purchasing its assets. Federal Deposit Ins. Corp. v. Hoover-Morris Enterprises, supra. The language of the statute is as follows:
"(e) Agreements against interests of Corporation
No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, *1272 which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank."
D'Oench and Section 1823(e) demonstrate the policy in federal banking law that the FDIC should not be bound by anything outside a bank's records when the FDIC purchases the bank loans and loan documents. Federal Deposit Ins. Corp. v. MM & S Partners, 626 F.Supp. 681 (N.D. Ill.1985). The effect of Section 1823(e) is to insulate the FDIC in its official capacity from any claims a debtor of an insolvent bank may have against the insolvent bank. Federal Dep. Ins. Corp. v. James T. Barry Co., 453 F.Supp. 81 (E.D.Wis.1978).
The Congressional purpose in creating the FDIC was to promote soundness of banking and to aid the government in the discharge of its financial transactions. Federal Deposit Ins. Corp. v. Rockelman, 460 F.Supp. 999 (E.D.Wis.1978). These sound policy reasons dictate against holding the FDIC liable for knowledge of side agreements as well as the hidden value of bank assets. F.D.I.C. v. Merchants Nat. Bank of Mobile, 725 F.2d 634 (11th Cir. 1984), cert. den., 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984).
"Typically, the FDIC must move quickly in buying a bank's assets, and it should not be obliged to rummage through a bank's records to find the hidden value of the notes. See Wood, 758 F.2d at 161. See also Harrison, 735 F.2d at 412-13 n. 6 (federal policy to promote stability of nation's banking system by facilitating FDIC's smooth acquisition of assets). Therefore, the policy supporting FDIC protection in collateral agreement situations applies equally to all situations in which the maker's defense is based on something, representations or conduct, outside of the note itself." (Footnote omitted.) Federal Deposit Ins. Corp. v. MM & S Partners, 626 F.Supp. 681, at page 687 (N.D.Ill.1985).
Appellants allege that the note was unenforceable because of error or mistake, estoppel, failure of consideration, fraud and illegality. Appellants' reconventional demand against Planters is based on the claim that the bank's officers fraudulently or negligently induced the appellants to purchase Kinney Plantation by means of representations that the bank would provide financing through a series of loans sufficient to make the farming operation successful. Appellants claim that Planters agreed to extend them a line of credit of 1.2 million dollars, which was evidenced by a "master note" from L & W Farms and the continuing guarantees of each of the principals of L & W Farms given to Planters.
The Supreme Court has made clear that agreements which avoid the requirements intended to protect the FDIC are invalid. Section 1823(e) is explicit in its requirements for the validity of collateral agreements. Federal Deposit Ins. Corp. v. de Jesus Velez, 678 F.2d 371 (1st Cir.1982).
It has been held that Section 1823(e) is a sufficient basis to grant summary judgment on a defendant's fraud in the inducement defense. Federal Deposit Ins. Corp. v. Hatmaker, 756 F.2d 34 (6th Cir.1985). In Hatmaker, the court found that Section 1823(e) clearly covers a defense based on an oral promise by the bank to make future loans to the borrower which the bank does not intend to perform. Any affirmative defense that flows from an oral agreement is barred by this statute, even if phrased in terms of fraud in the inducement. Federal Deposit Ins. Corp. v. Vestring, 620 F.Supp. 1271 (D.C.Kan.1985).
"If an obligor may successfully void a note and recoup damages against the FDIC based on a claim of fraudulent inducement from an unwritten agreement, he will have made an end run around § 1823(e) by asserting as fraudulent the same unwritten agreement of which a breach resulting in damages may not under § 1823(e) be asserted against the FDIC." Federal Deposit Ins. Corp. v. Lattimore Land Corp., 656 F.2d 139, at page 146 (5th Cir.1981).
*1273 Appellants seek to rely on several cases establishing the defenses to Section 1823(e) of failure of consideration, fraud, and breach of bilateral obligations concerning the asset. F.D.I.C. v. Merchants Nat. Bank of Mobile, supra; Gunter v. Hutcheson, supra. These cases can be distinguished, since the obligors in those cases were not seeking to alter the terms of the written documents by the terms of an undisclosed oral arrangement, but instead were asserting that the written documents themselves were invalid because of the underlying factual misrepresentation. Federal Deposit Ins. Corp. v. Langley, 792 F.2d 541 (5th Cir.1986).
In Langley, supra, a recent Fifth Circuit case involving the same Planters Bank as the one in this suit, the defendants asserted claims against the FDIC, similar to those made in the present case, and the court held that defenses emanating from an oral side agreement with the bank are barred by the FDIC's statutory protections. As in the present case, the Langleys purchased a farm financed by Planters executing a promissory note secured by a mortgage and personal guaranties. When the Bank sued for nonpayment, the Langleys initiated suit against Planters, alleging that the bank made certain representations that the defendants considered material to their entering into the loan.
Finding that the warranties and loan terms alleged by the Langleys were not contained in the promissory note, guaranty, or mortgage, the court could not conclude that Planters withheld material terms from the parties. Relying on Section 1823(e), the court affirmed the motion for summary judgment in favor of the FDIC, reasoning as follows:
"Turning from these principles to the facts of the instant case, it cannot be gainsaid that the Langleys and Planters withheld material terms from the eyes of federal examiners. Indeed, the absence of such terms from Planters' loan files as to the alleged nonrecourse nature of the loan and the deferral of all payments until the property was resold, effectively rendered what would appear to an objective observer to be a sound loan into one of highly questionable, if not minimal, value. It is clear that this total oral side agreement is an `agreement which tend[s] to diminish ... the ... interest of the [FDIC].' Thus, the Langleys clearly did not comport with the dictates of section 1823(e) and its predecessor, D'Oench. Despite the critical importance of these alleged loan terms, they were not included in the loan documents available to bank examiners. By not insisting that Planters' promises and agreements be included in the loan documentsassurances which the Langleys concede go to the heart of their loan transaction the Langleys lent themselves to a loan transaction that withheld the key aspects of their loan transaction from bank regulators. As this Court has noted, `The language of the statute is all encompassing; any agreement is subject to the statute if it tends to defeat or diminish FDIC's rights in an asset purchased under authority of § 1823.' FDIC v. Hoover-Morris Enterprises, 642 F.2d 785, 787 (5th Cir.1981)." Federal Deposit & Ins. Corp. v. Langley, 792 F.2d 541, at page 545 (5th Cir.1986).
Appellants urge that their financing agreement with Planters was evidenced by a "master note" for 1.2 million dollars. In this case, the evidence in the record shows that the alleged "master note" has never been located, and the witnesses of Planters who testified at the trial denied that such "master note" ever existed. When a bank promises to lend the maker more money in the future, the promise constitutes a side agreement, governed by Section 1823(e). Federal Deposit Ins. Corp. v. MM & S Partners, supra. Where the agreement is not in writing, where its execution is disputed, where it was not approved by the board of the bank in the minutes of the bank, and was not an official record of the bank, the agreement is unenforceable against the FDIC in its corporate capacity under the literal language of Section 1823(e). Federal Deposit Ins. Corp. v. Hatmaker, supra. We cannot say *1274 that the trial judge was manifestly in error in finding that there was no written agreement for a line of credit to be extended by Planters to L & W Farms and therefore there could be no failure of cause under such agreement.
Since there is no genuine issue of material fact as to the unenforceability of an unwritten agreement by the original parties in this suit against the FDIC, it cannot be said that the trial court was clearly wrong or manifestly in error in granting summary judgment for the plaintiff.
For the foregoing reasons the judgment of the trial court is affirmed. All costs of this appeal are taxed against defendants-appellants.
AFFIRMED.